No. 2022-1511

# United States Court of Appeals
# for the Federal Circuit

OPTOLUM, INC.,

*Plaintiff-Appellant,*

*v.*

CREE, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Middle District of North Carolina in No. 1:17-cv-00687-WO-JLW,
District Chief Judge William L. Osteen, Jr.

**BRIEF OF APPELLEE CREE INC.**

Blaney Harper
Edwin Garcia
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
(202) 879-3939

Peter D. Siddoway
Sage Patent Group
2301 Sugar Bush Road, Ste. 200
Raleigh, NC 27609
(984) 219-3369

Claim 1 of U.S. Patent No. 7,242,028 is illustrative and reproduced below.

1. A light source comprising:

an elongate thermally conductive member having an outer surface;

a plurality of solid state light sources carried on said elongate member outer surface at least some of said solid state light sources being disposed in a first plane and others of said solid state light sources being disposed in a second plane not coextensive with said first plane;

electrical conductors carried by said elongate thermally conductive member and connected to said plurality of solid state light sources to supply electrical power thereto;

said elongate thermally conductive member being configured to conduct heat away from said solid state light sources to fluid contained by said elongate thermally conductive member; and

said elongate thermally conductive member comprises one or more heat dissipation protrusions, at least one of said heat dissipation protrusions being carried on said elongate member outer surface.

# CERTIFICATE OF INTEREST

Case No. 2022-1511

*OptoLum, Inc. v. Cree, Inc.*

Filing Party/Entity:  Cree, Inc. (now known as Wolfspeed, Inc.)

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: October 28, 2022     Signature: */s/ Blaney Harper*

Name:     Blaney Harper

**1. Represented Entities** (Fed. Cir. R. 47.4(a)(1)) – Provide the full names of all entities represented by undersigned counsel in this case.

Cree, Inc. (now known as Wolfspeed, Inc.).

**2. Real Party in Interest** (Fed. Cir. R. 47.4(a)(2)) – Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

None/Not Applicable.

**3. Parent Corporations and Stockholders** (Fed. Cir. R. 47.4(a)(3)) – Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None/Not Applicable.

**4. Legal Representatives** – List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

**Jones Day**:  Andrea R. Dill; Spencer K. Beall

**Sage Patent Group**:  Lynne A. Borchers

**Lewis Roca Rothgerber Christie**: Shane E. Olafson

**5. Related Cases** – Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). *See also* Fed. Cir. R. 47.5(b).

None/Not Applicable.

**6. Organizational Victims and Bankruptcy Cases** – Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

Not Applicable

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ..............................................................i

TABLE OF ABBREVIATIONS ........................................................ viii

INTRODUCTION ................................................................................1

STATEMENT OF THE ISSUES............................................................3

STATEMENT OF THE CASE...............................................................3

    A.    The Asserted Patents ..............................................................4

    B.    The Asserted Claims ..............................................................6

    C.    Prosecution History ...............................................................6

    D.    District Court Proceedings ......................................................9

        1.    Claim Construction Briefing........................................9

        2.    Claim Construction Order............................................9

        3.    The Infringement Allegations ....................................13

        4.    Exclusion of Brand Value Testimony.........................20

        5.    Jury Verdict................................................................24

SUMMARY OF THE ARGUMENT ....................................................24

    A.    The Claim Construction, Including Disclaimer, Is Correct ..............24

    B.    Recapture of Disclaimed Subject Matter Was Properly Precluded ...........................................................................25

    C.    Excluded Unreliable Damages Expert Testimony ...........................26

STANDARD OF REVIEW .................................................................26

ARGUMENT ....................................................................................27

I.    THE DISTRICT COURT CORRECTLY CONSTRUED THE CLAIMS ...................................................................................27

    A.    Prosecution History Arguments Can Limit Claim Scope .................27

    B.    Prosecution History Shows Specific Structure Was Disclaimed .......30

        1.    Distinguishing Arndt Constituted A Disclaimer.....................30

# TABLE OF CONTENTS
(continued)

                                                                    **Page**

       2.    The Claim Constructions Properly Account for the
            Disclaimer ..................................................................36

II.    ESTOPPEL OF OPTOLUM'S EQUIVALENTS CLAIM IS
     CORRECT ...............................................................................40

    A.    Prosecution History Estoppel Prevents Patentees From
        Recapturing Subject Matter Surrendered During Prosecution
        Under The Doctrine Of Equivalents ..................................40

    B.    OptoLum's Equivalents Theory Improperly Attempts To
        Recapture Disclaimed Subject Matter.................................42

III.   EXCLUDING MR. SCALLY'S TESTIMONY WAS NOT AN
     ABUSE OF DISCRETION ....................................................53

    A.    Exclusion of Mr. Scally's "Brand Value" Testimony Was
        Correct ..............................................................................53

        1.    Mr. Scally's 5% Brand Value Rate Is Not Supported ............53

    B.    Mr. Scally Failed To Establish That The GE And Hoover
        Trademark Licenses Are Comparable.................................56

    C.    No Abuse Of Discretion In Excluding Mr. Scally's Testimony ........58

CONCLUSION ..................................................................................62

CERTIFICATE OF COMPLIANCE ................................................63

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Lab'ys v. Sandoz, Inc.*,
566 F.3d 1282 (Fed. Cir. 2009) (en banc) ........................................28

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
299 F.3d 1336 (Fed. Cir. 2002) ........................................................41

*Altair Eng'g, Inc. v. LED Dynamics, Inc.*,
413 F. App'x 251 (Fed. Cir. 2011) ..............................................33, 39

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*,
637 F.3d 1324 (Fed. Cir. 2011) ........................................................28

*Andersen Corp. v. Fiber Composites, LLC*,
474 F.3d 1361 (Fed. Cir. 2007) ........................................................28

*Astra Zeneca AB v. Apotex Corp.*,
782 F.3d 1324 (Fed. Cir. 2015) ........................................................54

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*,
334 F.3d 1294 (Fed. Cir. 2003) ........................................................38

*Bryte ex rel. Bryte v. Am. Household, Inc.*,
429 F.3d 469 (4th Cir. 2005) ......................................................26, 53

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*,
224 F.3d 1308 (Fed. Cir. 2000) ........................................................39

*Comput. Docking Station Corp. v. Dell, Inc.*,
519 F.3d 1366 (Fed. Cir. 2008) ............................................29, 32, 39

*Desper Prod., Inc. v. QSound Labs, Inc.*,
157 F.3d 1325 (Fed. Cir. 1998) ........................................................41

*Enplas Display Device Corp. v. Seoul Semiconductor Co.*,
909 F.3d 398 (Fed. Cir. 2018) ..........................................................54

*Genuine Enabling Tech. LLC v. Nintendo Co.*,
29 F.4th 1365 (Fed. Cir. 2022) ........................................................29

*Gillespie v. Dywidag Sys.. Int'l, USA*,
501 F.3d 1285 (Fed. Cir. 2007) ........................................27, 33, 39, 40

*Hanson v. Alpine Valley Ski Area, Inc.*,
718 F.2d 1075 (Fed. Cir. 1983) ........................................................59

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Intendis GmbH v. Glenmark Pharms., Inc., USA*,
   822 F.3d 1355 (Fed. Cir. 2016) ............................................................40

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ...............................................................56

*N. Am. Container Inc. v. Plastipak Packaging Inc.*,
   415 F.3d 1335 (Fed. Cir. 2005) ............................................................29

*Nease v. Ford Motor Co.*,
   848 F.3d 219 (4th Cir. 2017) ...............................................................58

*Omega Eng'g, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003) .......................................................27, 45

*PODS, Inc. v. Porta Stor, Inc.*,
   484 F.3d 1359 (Fed. Cir. 2007) .....................................41, 43, 46, 47

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   904 F.3d 965 (Fed. Cir. 2018) .......................................................40, 53

*Procter & Gamble Co. v. Paragon Trade Brands, Inc.*,
   989 F. Supp. 547 (D. Del. 1997) ...........................................................55

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) ..............................................................56

*Rheox, Inc. v. Entact, Inc.*,
   276 F.3d 1319 (Fed. Cir. 2002) ............................................................28

*Saffran v. Johnson & Johnson*,
   712 F.3d 549 (Fed. Cir. 2013) ..............................................................28

*Sound View Innovations, LLC v. Hulu, LLC*,
   33 F.4th 1326 (Fed. Cir. 2022) .......................................................27, 37

*Southwall Techs., Inc. v. Cardinal IG Co.*,
   54 F.3d 1570 (Fed. Cir. 1995) .......................................................27, 41

*Soverain Software, LLC v. Newegg, Inc.*,
   836 F. Supp. 2d 462 (E.D. Tex. 2010)...................................................55

*Spine Sols., Inc. v. Medtronic Sofamor Danek USA, Inc.*,
   620 F.3d 1305 (Fed. Cir. 2010) ............................................................47

# <u>TABLE OF AUTHORITIES</u>
(continued)

**Page(s)**

*Springs Window Fashions LP v. Novo Indus., L.P.*,
  323 F.3d 989 (Fed. Cir. 2003) ......................................................40, 41

*Tech. Props. Ltd. LLC v. Huawei Techs. Co.*,
  849 F.3d 1349 (Fed. Cir. 2017) .................................................29, 35

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
  789 F.3d 1335 (Fed. Cir. 2015) .........................................................45

*Trading Techs. Int'l, Inc. v. Open E Cry, LLC*,
  728 F.3d 1309 (Fed. Cir. 2013) .........................................................45

*Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*,
  15 F.4th 1136 (Fed. Cir. 2021) ......................................26, 32, 39, 41

*World Class Tech. Corp. v. Ormco Corp.*,
  769 F.3d 1120 (Fed. Cir. 2014) .......................................................27

STATUTES

35 U.S.C. § 284 ...............................................................................21, 54

OTHER AUTHORITIES

3 McCarthy on Trademarks and Unfair Competition § 18:2 (5th ed.) ...................57

# TABLE OF ABBREVIATIONS

The following abbreviations are used in this brief.

### *Parties*

| Abbreviation | Term |
|---|---|
| Cree | Cree, Inc. (now known as Wolfspeed, Inc.) |
| OptoLum | OptoLum, Inc. |

### *Citations*

| Abbreviation | Term |
|---|---|
| Appx___ | Joint Appendix at page(s)____ |

### *Terms*

| Abbreviation | Term |
|---|---|
| '028 Patent | U.S. Patent No. 7,242,028 (Appx327) |
| '303 Patent | U.S. Patent No. 6,831,303 (Appx320) |
| POSA | Person of Ordinary Skill in the Art at the Time of the Invention |
| Asserted Patents | The '028 Patent and '303 Patent, collectively |
| DOE | Doctrine of Equivalents |
| ETCM | Elongate Thermally Conductive Member |
| PHE | Prosecution History Estoppel |
| LED | Light Emitting Diode |
| SSLS | Solid State Light Source |
| Arndt | U.S. Patent No. 6,848,810 |
| Limitation "being disposed in a second plane not coextensive with said first plane" | The two-plane limitation |
| BBr. | OptoLum's Opening Brief (Blue Brief) |

All emphasis is added throughout unless otherwise indicated.

## INTRODUCTION

This appeal arises from OptoLum's attempt to avoid the applicant's clear and unmistakable disclaimer about the scope of its claimed invention with respect to the placement of LEDs, and a claim construction that properly accounts for the applicant's explanations to the Examiner.

During prosecution, the claims had been rejected as anticipated by the Arndt prior art reference. The rejected claims required that some solid state light sources be "disposed in a *first* plane" and others be "disposed in a *second* plane not coextensive with said first plane." To overcome that rejection, the applicant told the Examiner he was "mistaken" about the correspondence of the prior art to the claims. The applicant expressly characterized the arrangement of all the LEDs disclosed in Figure 2B of Arndt as being in the *same* plane—distinguishing such a single-plane LED arrangement from the two-plane limitation expressed in the claims.

The district court correctly found that the applicant's prosecution-history distinction over Arndt was an unambiguous disclaimer of claim scope. OptoLum contends there was been no disclaimer but merely an explanation of the prior art. This argument misrepresents the facts. The applicant expressly distinguished the single-plane prior art structure from the two-plane claim limitation. That disclaimer specifically excluded from claim scope a structure in which LED placement may be described as being in a single plane perpendicular to the central axis of the elongate

thermally conductive member.  Moreover, the district court's claim construction properly encompassed the scope of that disclaimer and also of the scope of the term "plane" as the applicant had relied on it to distinguish the Arndt prior art.

In view of the claim construction, OptoLum attempts now to recapture the scope of the disclaimed subject matter by asserting infringement under the doctrine of equivalents.  However, there is no genuine issue of material fact that the arrangement of LEDs used in Cree's single ring bulbs are disposed in a ***single*** plane perpendicular to the axis of the tubular heat sink.  This is precisely the same subject matter the applicant disclaimed.  Recapture of that subject matter under assertion of doctrine of equivalents is not permissible as a matter of law.  Regardless of OptoLum's infringement theory, that legal boundary cannot be overcome.  The district court was correct to hold that prosecution history estoppel applied and precluded reliance on the doctrine of equivalents.  That holding should be affirmed.

Finally, the proffered testimony of OptoLum's damages expert (Mr. Scally) concerning a 5% incremental royalty—allegedly to account for an increase in value of the Cree company brand—fails the basic requirements for evidentiary support of expert testimony.  The district court was correct to exclude that testimony and OptoLum has failed to establish abuse of discretion.

## STATEMENT OF THE ISSUES

1.     Did the district court correctly construe the limitations "disposed in a second plane not coextensive with said first plane" and "plane" in light of the intrinsic record and the applicant's clear and unambiguous arguments distinguishing the Arndt prior art reference with respect to such limitations?

2.     In view of the arguments made by the applicant during prosecution, and what a reasonable competitor would be led to believe was disclaimed by those arguments, did the district court correctly determine that prosecution history estoppel barred OptoLum's attempt to recapture disclaimed subject matter?

3.     Did the district court abuse its discretion in excluding the unreliable opinions of OptoLum's damages expert?

## STATEMENT OF THE CASE

OptoLum filed this action in the District of Arizona, alleging that Cree infringed various claims of U.S. Patent Nos. 6,573,536 ("the '536 Patent"), 6,831,303 ("the '303 Patent"), and 7,242,028 ("the '028 Patent"), all titled "Light Emitting Diode Light Source." The '303 Patent is a continuation of the '536 Patent. Appx188; Appx313. The '028 Patent is a continuation of the '303 Patent. Appx196 at (63). OptoLum amended its complaint, dropping the '536 Patent but retaining the '303 and '028 Patents ("Asserted Patents"). Appx248-312; Appx405-462. The case was then transferred to the Middle District of North Carolina. Appx207; Appx214.

The products-at-issue are Cree LED light bulbs.[1]  As depicted below, Cree's LED light bulb is similar to the well-known incandescent light bulb—it looked like, and worked like, a conventional light bulb.  Cree's LED bulb plugged into the same socket, turned on the same way, and incorporated a similar glass globe as a conventional light bulb.  The fundamental difference between a conventional light bulb and Cree's LED bulb was that the Cree bulb incorporated a ring of light emitting diodes, rather than a burning filament, within the glass globe.





Appx3927.

## A.    The Asserted Patents

The Asserted Patents generally relate to a lighting structure for removing heat away from a plurality of LEDs.  Appx189; Appx196.  The disclosed lighting

---

[1] "LED" refers to "light emitting diode" and concerns a type of solid state light source.

structure is a "light source that utilizes light emitting diodes that emit white light" wherein "[t]he diodes are mounted on an elongate member having at least two surfaces upon which the light emitting diodes are mounted." Appx189; Appx196.



Figures 1-3 (above) of the Asserted Patents depict the disclosed "elongate thermally conductive member or heat sink 101." Appx192 at 2:58-62. "The exterior surface 107 of the elongate heat sink 101 has a plurality of Light Emitting Diodes 109 disposed thereon." Appx193 at 3:11-12. The LEDs 109 are disposed such that "the backs of LEDs 109 are in thermal contact with the tube surface 107." Appx193 at 3:43-45.

The principle difference between the '303 Patent and the '028 Patent is the substitution of the phrase "solid state light sources" in the claims of the '028 Patent for the phrase "light emitting diodes" in the claims of the '303 Patent. Appx14. The disclosure of the two patents are otherwise nearly identical. Appx1. While the claims of the '028 Patent refer to "solid state light sources," that phrase does not otherwise appear in the written description. Appx15.

### B.    The Asserted Claims

OptoLum alleged that Cree's LED bulbs infringed claims 2-4 and 6-9 of the '303 Patent and claims 1-3, 5-8, 14, and 16 of the '028 Patent ("the Asserted Claims"). All the Asserted Claims incorporate the "elongate thermally conductive member" ("ETCM") limitation. *See e.g.*, Appx193 at claim 1. The '303 Patent claims also require at least some LEDs "being disposed in a first plane and others of said light emitting diodes being disposed in a second plane not coextensive with said first plane" (the "two-plane limitation"). Appx193 at claim 1. The '028 Patent claims incorporate the exact same two-plane limitation language as in the '303 Patent, except that the '028 claim phrase "solid state light sources" ("SSLs") replaces the '303 claim phrase "light emitting diodes." Appx14.

### C.    Prosecution History

Notwithstanding that the two-plane limitation is contained in all Asserted Claims of the Asserted Patents, the written description of the patents contains no

disclosure describing the claim terms "plane," "first plane" or "second plane." Appx19.  The only intrinsic evidence explaining the two-plane limitation appears in the prosecution history of the '028 Patent.

In the initially filed continuation application for the '028 Patent, independent claim 1 incorporated substantially all the limitations of the eventually allowed claims of the '028 Patent, including the same two-plane limitation.  Appx4869; Appx200. The initial office action rejected claim 1 (and others then pending) "as being anticipated by Arndt."  Appx4913.  The Examiner cited Fig. 2B of the Arndt reference as disclosing the two-plane limitation.  Appx4913.

Arndt discloses "an LED array" applied to a "cooling member" that "optimally eliminate[s]" heat.  Appx3792 at Abstract.  Fig. 2B of Arndt (reproduced below) depicts "an axial cross-section" of "a tubularly shaped, cylindrical, hollow cooling member 3."  Fig. 2B also shows a "flex board 1 . . . with an array of LEDs 2 [that is] laminated around" the cooling member.  Appx3797 at 4:42-47.



In response to the initial office action, the applicant acknowledged that the "Examiner relies upon [Arndt] as the primary reference for rejecting all claims in the application." Appx4972. The applicant then asserted that "[Arndt] does not anticipate or make obvious the novel structures of applicant's invention as claimed." Appx4972. Applicant further asserted that "[Arndt] shows and teaches structures that are fundamentally different from applicant's claimed invention." Appx4972.

The applicant made two separate arguments that the structure of Arndt is distinct from the claimed structure. The applicant first argued:

> **It is clear from a plain reading of the descriptions of the structures in [Arndt] that the printed circuit board 1 carries LEDs 2 on one surface and carries the heat sink 3(thermally conductive member) on its opposite surface**.
>
> In other words, **[Arndt] teaches away from the novel structures of applicant's claimed invention** which set forth structure in which the LEDs [. . .] are carried on an elongate thermally conductive member.

Appx4975 (emphasis in original). The applicant then argued:

> In addition, the Examiner points to Fig. 2B as showing solid state light sources that are in a first plane and a second plane not coextensive with the first plane. The Examiner is mistaken. **All the LEDs shown in FIG. 2B are in the same plane, i.e., the plane defined by the drawing sheet**.

Appx4975 (emphasis in original).

### D.    District Court Proceedings

#### 1.    Claim Construction Briefing

The parties' Joint Claim Construction Statement ("JCCS") sought to construe eight phrases, including the following: "a plurality of solid state light sources," "disposed in a second plane not coextensive with said first plane" (the "two-plane limitation"), and "plane."  Appx564-565.  In the JCCS, the parties also stipulated that "a plurality of light emitting diodes" meant "two or more *packages*, each of which comprise a thermally conductive back and a diode that emits light."  Appx564. After a claim construction hearing, the parties submitted supplemental briefing. Appx219.

#### 2.    Claim Construction Order

The claim construction order included an extensive analysis.  The phrase "a plurality of solid state light sources" meant "two or more *packages*, each of which comprise a solid state light source."[2]  Appx17.  That construction was consistent with the parties' *agreed-upon* construction of "a plurality of light emitting diodes."

The two-plane claim limitation was construed to mean "disposed in a second plane that is not the same as the first plane wherein the plurality of LEDs are not

---

[2] At trial, the district court further construed the phrase "solid-state light sources" as encompassing a broader category of light sources than LEDs.  Appx6518 (Tr. 4:22-25 ("I think a solid-state light source is different from an LED package. I think it's a broader category to include not simply light emitting diode but laser emitting diodes and various other light sources.")).

disposed in a single plane perpendicular to the axis of the elongate thermally conductive member." Appx24. This construction incorporated the district court's finding of prosecution history disclaimer. The district court found that the applicant's distinction (described above) between the claimed structure defined by the two-plane limitation and structure shown in Figure 2B of Arndt constituted a "clear and unequivocal disclaimer" of a structure wherein the "LED placement may be described as being in a single plane perpendicular to the axis of the elongate thermally conductive member." Appx22-24.

OptoLum's proposed construction of the two-plane limitation was "arranged in a second flat surface not having the same spatial boundaries as the first flat surface." Appx23. OptoLum had also contended that the term "plane" should be construed as any "flat surface." Appx23. The court considered those constructions in light of the disclosure in the Asserted Patents, explaining that "[w]hile the specification and abstract mention LEDs being mounted on the elongate member's outer surface, 'plane' is used to describe the fashion in which the LEDs are arranged and it is not necessarily linked with the physical flat elongate member's outer surface." Appx27. Also, in considering the prosecution history, the court explained that "the 'plane' implicated by the disclaimer—the plane perpendicular to the axis of the elongate thermally conductive member—is likewise not tied to the physical flat surfaces thereof." Appx27.

Moreover, the court recognized that "the two plane limitation is tied to the elongate nature of the elongate thermally conductive member."    Appx28. Accordingly, the court found that OptoLum's "proffered explanation of Figure 2 of the '028 and '303 Patents and Figure 2B of Arndt meeting the two-plane limitation, pictured below, is unavailing:"



Appx23.

In contrast with OptoLum's explanation, the court found that Cree's conceptualization (highlighted below) of the two-plane limitation "is in keeping with the patent's teaching and prosecution history," (Appx22), including the applicant's distinction over Arndt's Figure 2B.  Cree's Annotation of Figure 1 (below) from the Asserted Patents illustrates the LEDs (109) having a relative vertical position along the length of the elongate member 101.  As shown below, various groups of LEDs 109 can be identified as disposed in planes that do ***not*** have an orientation ***perpendicular*** to the central axis of the elongate member.



FIG. 1

Appx23.

For example, a first set of four such LEDs highlighted in blue and disposed on a plane denoted with red arrow designated "A" (highlighted in yellow). A second such set of three LEDs is highlighted in orange and disposed on a plane designated with red arrow "B" (highlighted in yellow). Significantly, each of the planes "A" and "B" in Figures 1 and 2 include multiple LEDs (four and three, respectively). Each of these multiple LEDs (as grouped in planes A and B) has a different vertical position along the elongate member as shown by the green horizontal lines drawn through the LEDs of Figure 1. Also, each of the two planes (*i.e.* "A" and "B") has an orientation parallel (not perpendicular) to the central axis of the elongate member,

but the planes are distinct from each other.  As the district court noted, additional vertical planes for other groups of LEDs may be identified consistent with Figure 2, but at a minimum, two such planes are required by the patent claims.

Further, Cree's conceptualization of the two-plane limitation ***does not*** incorporate the very subject matter the patent applicant (OptoLum) characterized during prosecution as ***not*** being the claimed subject matter.  That is, where ***all*** the LEDs are mounted around the heat sink at the ***same vertical position*** (*e.g.* if they were all located on the same green line, which is not in the figure shown above), then they can be described as being within a single plane perpendicular to the axis of the elongate member (*i.e.*, in the plane of the paper).  In that circumstance, the two plane limitation is not met because all the LEDs are disposed in a ***single*** plane.

### 3.    The Infringement Allegations

OptoLum accused two categories of Cree LED bulbs of infringing the asserted patents: (1) Single Ring bulbs, and (2) Multiple Ring bulbs (collectively, "Accused Products").  BBr. 6.

| Cree's Single Ring Bulb | Cree's Multiple Ring Bulb |
|---|---|
|  | |

Appx4270.

As shown above, both categories of Accused Products incorporate LEDs mounted in a ring around a tubular heat sink. All the LEDs in a single ring are at the same vertical position with respect to the heat sink. The Single Ring bulbs have one ring of LEDs and the Multiple Ring bulbs have two or more rings of LEDs.

OptoLum chose to forego pursuing literal infringement allegations concerning the Single Ring bulbs. Cree moved for partial summary judgment of no literal infringement concerning the Single Ring bulbs for lack of proof of infringement for the two-plane limitation. Appx75. In granting that motion, the district court explained that "Mr. Charles McCreary, OptoLum's expert, testified:

> Q. So since we're talking about the 60 watt LED replacement light bulb this is a single-ring analysis; isn't that correct?

- 14 -

> A. Yes, I believe so.
>
> Q. And my question to you is is it your testimony that this [two-plane] limitation is met by the 60 watt single-ring bulb literally or under the Doctrine of Equivalence?
>
> . . . .
>
> A. I believe that a claim — this claim is met via the Doctrine of Equivalence as my counsels have explained it to me."

Appx76.  The district court further explained that "OptoLum does not appear to respond to this argument."  Appx76.  It found that "there is no genuine issue of material fact that the Single Ring bulbs do not literally infringe."  Appx77.  That is, there is no genuine issue of fact that all the LEDs in Cree's Single Ring bulbs are arranged *only* in a single plane, not two planes as the claims require.

OptoLum's infringement allegations under the doctrine of equivalents ("DOE") are based on OptoLum's argument that each of the actual LEDs in the Single Ring bulbs is the equivalent of multiple constructive LEDs.  According to this argument, each constructive LED (corresponding to a chip and an associated portion of the LED package) have different locations around the tubular heat sink such that those constructive LEDs are disposed in multiple planes.

Before trial, Cree filed a motion *in limine* to preclude any DOE infringement assertion concerning the Single Ring bulbs on the grounds of prosecution history estoppel.  Appx232.  Cree maintained that because the applicant disclaimed the specific structure used in the Single Ring bulbs—that is, structure wherein LED

placement may be described as being in a single plane (*i.e.*, at the same vertical position along a single horizontal line as shown below highlighted in red) — prosecution history estoppel barred OptoLum from asserting infringement by the Single Ring bulbs under the DOE.  Appx3034-3041.  The District Court took the issue under advisement.  Appx111-113.



Appx4270-80.

     After the close of OptoLum's evidence at trial, Cree filed a motion for judgment as a matter of law ("JMOL") under Rule 50(a) regarding prosecution history estoppel.  Appx241.  The Court again decided to take the issue under advisement.  Appx5967 (Tr. 97:14-19).  After the close of Cree's evidence at trial, Cree filed a renewed JMOL motion under Rule 50(a) regarding prosecution history estoppel.  Appx243.  On the last day of trial, the District Court granted Cree's motion.  Appx244.

In granting Cree's motion, the District Court found that the "single-ring bulbs do not infringe under prosecution history estoppel." Appx6520 (Tr. 6:18-19). The Court explained:

> The key to both solid-state light source and light emitting diode is the fact that the product has to emit light, which, in turn, means that it is in a package, a mechanical —at a minimum, a mechanical structure and a power supply, whether that's a PCB board — whether that's a printed circuit board or something else, it has to have a power supply. It has to have an anode and cathode so the power runs in one direction. That is a package. There's no doubt in my mind, whether it's called an LED or a package, that what's disclosed and discussed in the '819 [Arndt] patent as LEDs in a single plane are LED packages in a single plane, and, as a result, . . . I find that particular arrangement of LEDs was disclaimed during the patent history giving meaning to the two-plane limitation, and those LED packages disclosed in the '819 . . . patent are arranged in a single plane around that . . . cooling member[,which] was the subject of the patent history for the '028 patent.

Appx6522 (Tr. 8:4-22).



Appx4270-4280.

Furthermore, the trial testimony by OptoLum's own expert witness (Dr. Stiegerwald) concerning the structure of the LEDs (as shown above) within the Cree Accused Products conclusively established that *each* of the LEDs mounted in the one ring within the bulbs are a single LED—that is, they each consist of a single package substrate, with one anode and one cathode.

Dr. Steigerwald testified:

Q And if we could go to — can we pull up your tutorial at PDX 2.2 — 2.20, I'm sorry. Now, the device that you have analyzed on —concerning the Cree LED has a substrate with an anode and cathode, right?

A There is an anode and cathode connection to the package from the back side, correct.

Q Right. It's on the back side of the substrate, correct?

A Yes.

Q And there's one anode and one cathode, correct?

A The package has one anode and one cathode, yes.

. . .

Q So you can only access all eight [chips] at once, right?

A Yes. That would be referred to as a series-connected LEDs where one unit of current goes through all of them, and there's a single anode and cathode for the array.

Appx5364-5365.

Q Okay. So if we could go back to the PDX 2.20. So if I look at the diagram that you put together concerning the Cree LEDs. On the right-hand side in purple, I guess, is an outline of the ceramic substrate. Do you see that?

A Yes, I did.

Q And so there is one substrate for all eight chips, correct?

A That is correct.

Q The substrate is not divided up into eight little parts, is it?

A No, this package is one common substrate for the eight chips.

Q And that common substrate is what shows up in the Cree LED lightbulbs, right?

A That's correct, but that's not stating my equivalents analysis.

Q Well, whether it's stating your equivalents analysis or not, it's a fact that that single ceramic substrate is what's used for each of the XB-E or XB-G LEDs that's placed in a ring around the — in the Cree LED bulbs, correct?

A Yes, that's correct.

Appx5371-5372.

On this record, the district court "f[ound] in terms of prosecution history estoppel that . . . to allow the doctrine of equivalents to be used to find that the single-ring bulbs infringe would . . . allow the Plaintiff to recapture that single plane alignment of LED packages that was disclosed in [Arndt] and disavowed in the prosecution history."  Appx6523 (Tr. 9:17-25).  The Court reiterated that "ultimately, the key is [the SSL or LED] requires a package with a power source, and both the structure and the power source are a component of an LED package when that package . . . is used to emit light as taught by [Arndt], the '303 patent, and the '028 patent[]."  Appx6524 (Tr. 10:8-15).

### 4.    Exclusion of Brand Value Testimony

OptoLum's expert concerning damages, William B. Scally, submitted a pre-trial expert report.  Appx238.  Mr. Scally opined on an amount of damages to compensate for the alleged infringement of the Asserted Patents.  Mr. Scally

contended that OptoLum should recover $31.3 million as a reasonable royalty under 35 U.S.C. § 284.  Appx3879.

Mr. Scally contended that a 10% running royalty rate applied to the approximately $313 million net sales of the Accused Products.  Appx3879.  His proposed 10% royalty was comprised of two components: a 5% base rate applied to the net sales of the Accused Products and a 5% incremental value rate based on an alleged value of the Asserted Patents to Cree's brand development.  Appx3935.

Mr. Scally opined that the 5% incremental rate was appropriate based on his estimate of the value that the Accused Products contributed to the development of the Cree company brand.  Appx3940.  Mr. Scally, however, did not measure or quantify any actual Cree brand value increase from 2013 to 2017.  Appx2620 (Tr. 182:15-19).  Mr. Scally instead arrived at the 5% value for the rate based on two trademark licenses.  Appx3935; *see also* Appx2687-2758.  Mr. Scally selected these two particular licenses (one involving General Electric and one involving Hoover) from a larger group of licenses which he had identified out of a database referred to as Royalty Source.  Appx3954.  Unlike the parties in the selected GE and Hoover trademark license agreements, however, Mr. Scally acknowledged that "Cree was not licensing an established brand name."  Appx3935.

Further, Mr. Scally confirmed that brand value is a separate asset from the right to make, use, and sell the Accused Products.  *See* Appx2618-2619 (Tr. 180:23-

181:8).  Indeed, during Mr. Scally's deposition, he admitted that the 5% incremental rate accounts for value ***other than*** the value the patents contributed to the accused products:

> Q. Okay. So the value of the brand was something other than being able to make, use and sell the accused lightbulbs? Correct?
>
> MR. MISIC: Objection.
>
> A. Yes. It was something else.
>
> BY MR. HARPER:
>
> Q. Okay. And that something else was what you have labeled brand? Right?
>
> MR. MISIC: Objection.
>
> A. Yes.
>
> BY MR. HARPER:
>
> Q. And that 5 percent was a straight addition to the existing — to the 5 percent that you determined for the rest of the factors of your analysis? Correct?
>
> MR. MISIC: Objection.
>
> A. Yes. It is incremental.

Appx2617-2619.

Cree moved to exclude Mr. Scally's testimony regarding the incremental rate based on brand value.  Appx244.  Cree also filed a motion *in limine* to preclude evidence of brand value and license.  Appx233.  The district court granted both motions in part, finding "Mr. Scally's testimony does not meet the threshold

requirements of *Daubert* and Federal Rule of Evidence 104 with respect to an opinion that brand value increase supports an upward royalty rate of 5%." Appx155. Specifically, that "the brand value damage calculation was not based on sufficient facts, and there was insufficient data to support the opinion." Appx155.

The court first found that "Mr. Scally never explain[ed] how or why a hypothetical negotiation prior to infringement would take into consideration an increase in brand value from the use of a nonexclusive license from OptoLum or the relationship between a non-exclusive license and brand development in establishing the parameters of a hypothetical negotiation." Appx156.

The district court further found that Mr. Scally's opinion was speculative. Appx157. The Court explained:

> Mr. Scally offers no data or support to suggest any brand success could have been derived from product sales arising from a hypothetical non-exclusive license in the same way and manner that those sales occurred without a license agreement. That in turn makes it speculative that any brand success Cree may have realized from sales without a non-exclusive license agreement are probative of what facts or factors Cree or OptoLum might have hypothetically considered in negotiating a royalty with a component of brand value using a non-exclusive licensing agreement.

Appx157.

Finally, the district court found that, "even assuming that Plaintiff's interpretation of *Georgia-Pacific* Factor 11 is correct under certain circumstances,

Mr. Scally fails to explain how or why the trademark contract he used for guidance — the G.E./Safety Quick contract and the Hoover/Capstone Industries contract — apply to the hypothetical royalty negotiation between OptoLum and Cree." Appx158.  The Court explained:

> No data, facts, or analysis are provided to explain whether the value of the trademark licenses is derived from total sales, non-exclusive licenses, unique products, ownership of technology, or anything else. The analysis appears to rely exclusively on 'brand name,' (Scally Report (Doc. 299) at 62), without any analysis of the parameters of the hypothetical negotiation, including the effect, if any, of the technology on subject to a non-exclusive license instead of ownership of the technology. (*Id.*)

Appx158-159.

## 5.    Jury Verdict

After a nine-day jury trial, the jury returned a verdict of non-infringement. The jury found that OptoLum failed to prove that Cree's Multiple Ring Bulbs (the only Accused Products then remaining) infringed any of the asserted claims of the Asserted Patents.  Appx4534.

## SUMMARY OF THE ARGUMENT

### A.    The Claim Construction, Including Disclaimer, Is Correct

The applicant's distinction of the claim limitation over the prior art is clear on its face.  Responding to an anticipation rejection, the applicant expressly distinguished the scope of the two plane limitation over the structure disclosed by Figure 2B of Arndt on the basis that the LEDs shown in the prior art figure were all

in the *same* plane; the plane defined by the drawing sheet of Fig. 2B.  Because the distinction articulated by the applicant compared the prior art structure to the claim language and used the orientation of the plane to specifically identify the reason the two-plane limitation was not met, the applicant's disclaimer was clear and unambiguous.  OptoLum's excuse that the applicant was merely describing the prior art is belied by the plain text of the prosecution-history argument.  The district court thus correctly a) construed the two-plane limitation to exclude the disclaimed subject matter and b) did not limit the term "plane" to an embodiment described in the specification.

### B.    Recapture of Disclaimed Subject Matter Was Properly Precluded

The district court correctly concluded that prosecution history estoppel precluded OptoLum from relying on the doctrine of equivalents to prove its infringement claims.  OptoLum's single-ring infringement theory attempts to recapture the very subject matter that the applicant surrendered during prosecution: LEDs arranged in a single ring such that they are disposed in a single plane.  There is no factual issue that Cree's Single Ring bulbs have their LEDs arranged such that they are disposed in a single plane.  Recapture of that specifically disclaimed subject matter is precluded as a matter of law.  There was no error here.

### C.    Excluded Unreliable Damages Expert Testimony

The district court properly excluded testimony from OptoLum's damages expert, Mr. Scally, concerning a 5% incremental royalty rate based on brand value. Far from being an abuse of discretion, the district court's ruling was proper and supported by the law and facts.  Mr. Scally's proposed 5% incremental rate is i) not tied to the alleged infringing activities in this case, ii) not supported by evidence that **connects** the brand value increase to the alleged infringing activities or hypothetical negotiation, and iii) not supported by any quantification of actual Cree brand value increase from 2013 to 2017.  Mr. Scally's opinion testimony on the incremental rate fails the basic requirements for admissible expert testimony.

### <u>STANDARD OF REVIEW</u>

This Court "review[s] claim construction based on intrinsic evidence de novo and . . . any findings of fact regarding extrinsic evidence for clear error." *Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*, 15 F.4th 1136, 1140 (Fed. Cir. 2021).

A district court's evidentiary rulings, should not be overturned absent an abuse of discretion.  *See Bryte ex rel. Bryte v. Am. Household, Inc.*, 429 F.3d 469, 475 (4th Cir. 2005) ("The district court has broad latitude in ruling on the admissibility of evidence, including expert opinion, and we will not overturn *Daubert* evidentiary rulings with respect to relevance and reliability absent an abuse of discretion.").

## **ARGUMENT**

**I.   THE DISTRICT COURT CORRECTLY CONSTRUED THE CLAIMS**

### **A.   Prosecution History Arguments Can Limit Claim Scope**

In claim construction, "[w]e generally give words of a claim their ordinary meaning in the context of the claim and the whole patent document; the specification particularly, but also the prosecution history, informs the determination of claim meaning in context, including by resolving ambiguities and even if the meaning is plain on the face of the claim language, the patentee can, by acting with sufficient clarity, disclaim such a plain meaning or prescribe a special definition." *Sound View Innovations, LLC v. Hulu, LLC*, 33 F.4th 1326, 1332 (Fed. Cir. 2022) (quoting *World Class Tech. Corp. v. Ormco Corp.*, 769 F.3d 1120, 1123 (Fed. Cir. 2014) (citations omitted)) (holding that prosecution history arguments distinguishing prior art properly narrowed the broader plain meaning of the claim language).

"The doctrine of prosecution disclaimer is well established in Supreme Court precedent, precluding patentees from recapturing through claim interpretation specific meaning disclaimed during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). Patentees are "held to what [they] declare[] during the prosecution of his patent." *Gillespie v. Dywidag Sys.. Int'l, USA*, 501 F.3d 1285, 1291 (Fed. Cir. 2007). "Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995).

"Explicit arguments made during prosecution to overcome prior art can lead to a narrow claim interpretation because '[t]he public has a right to rely on such definitive statements made during prosecution.'" *Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1325 (Fed. Cir. 2002) (citation omitted); *Abbott Lab'ys v. Sandoz, Inc*., 566 F.3d 1282, 1289 (Fed. Cir. 2009) (en banc) ("[T]he prosecution history can often inform the meaning of the claim language by demonstrating . . . whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.") (citation omitted); *Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013) (holding that explicit statements distinguishing prior art during prosecution constitute a disclaimer of claim scope).

While prosecution history disclaimers must be "clear and unambiguous," "applicants rarely submit affirmative disclaimers along the lines of 'I hereby disclaim the following...' during prosecution." *Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013).  Disclaimers reflecting disavowal of the claim scope may apply even if the applicant distinguished the prior art on other grounds. *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed. Cir. 2011). "[A]n applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well." *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1374 (Fed. Cir. 2007).

The scope of a disclaimer is measured by the arguments actually made by the applicants, and it can be broader than what, in hindsight, was necessary to overcome the prior art. *Tech. Props. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1359 (Fed. Cir. 2017) (explaining that "the scope of surrender is not limited to what is absolutely necessary to avoid a prior art reference; patentees may surrender more than necessary"); *see also N. Am. Container Inc. v. Plastipak Packaging Inc.*, 415 F.3d 1335, 1345-46 (Fed. Cir. 2005). Courts look to the sum of the statements during prosecution and consider what a competitor might believe. *Comput. Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008) (holding that "the sum of the patentees' statements during prosecution would lead a competitor to believe that the patentee had disavowed" devices otherwise covered by the claim language).[3]

---

[3] One of the recent cases that OptoLum cites (BBr. 14), *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365 (Fed. Cir. 2022), illustrates why the district court here was correct. In *Genuine*, there was no question that disclaimer did occur based on the applicant's distinction over the prior art. *Id.* at 1374. But the question in that case concerned the scope of the disclaimer; whether "signals below the audio frequency spectrum" were bounded by a "500 Hz threshold." The intrinsic record did not include that threshold so disclaimer to that extent was improper. *Id.* at 1374-75. Those circumstances are distinct from the present case because the bound of the disclaimed subject matter here—all LEDs in the same plane—is expressly contained in the intrinsic record. The analysis in *Genuine* supports the district court's finding of disclaimer here because the boundary of the disclaimer is expressly contained in the ***intrinsic*** record.

**B.    Prosecution History Shows Specific Structure Was Disclaimed**

The district court correctly concluded that the applicant clearly and unambiguously disclaimed a structure in which LED placement may be described as being in a single plane perpendicular to the axis of the elongate thermally conductive member. Appx18-24. The district court also properly interpreted the term "plane" as used in the two-plane limitation to identify the spatial relationship of the LEDs as explained by the patentee in distinguishing the claim from the prior art. The district court's construction properly reflects the intrinsic evidence and the disclaimer.

**1.    Distinguishing Arndt Constituted A Disclaimer**

In the initial anticipation rejection, the Examiner specifically cited Fig. 2B of Arndt (reproduced below) as disclosing the two-plane claim limitation. Appx3794. That figure "shows an axial cross-section through a rotating light" source such as "an array of LEDs 2" that are "laminated around a tubularly shaped cylindrical, hollow cooling member 3." Appx3797.



To overcome the anticipation rejection, the applicant made two arguments. First, the applicant argued that the "carried on" limitation contained in the two-plane limitation language was not disclosed by Arndt. The applicant asserted that Arndt "**teaches away from the novel structures of the applicant's claimed invention.**" Appx803 (emphasis in original). The applicant then identified a second separate structural difference between the claims and the Arndt disclosure, arguing:

> In addition, the Examiner points to FIG. 2B as showing solid state light sources that are in a first plane and a second plane not coextensive with the first plane. The Examiner is mistaken. **All the LEDs shown in FIG. 2B are in the same plane, i.e., the plane defined by the drawing sheet.**

Appx803 (emphasis in original).

The applicant began its second argument (above) with the phrase "In addition," clearly identifying a second reason as being a separate and distinct argument structurally distinguishing the claimed subject matter from the Arndt disclosure. In this second argument, the applicant identified the two-plane claim limitation, identified the Examiner's interpretation of the Arndt disclosure (Fig. 2B) and then identified the applicant's structural distinction of the claim over Arndt. Here, that distinction is the applicant's specific interpretation of the term "plane." According to the express words of the applicant, the "plane is defined by the drawing sheet." Appx803. That is, the plane is not any surface on the Arndt structure (as OptoLum contends) but rather it is reflected in the spatial arrangement of the placement of the

Arndt LED packages.  As articulated by the applicant, the LED packages placed in a ring around the heat sink such that they are disposed in a plane perpendicular to the central axis of the tubular heat sink are in ***one single*** plane.  They are not in two or more planes as required by the two-plane limitation.

This two-plane distinction made by the applicant to overcome the prior art is unambiguous.  The distinction is explicit, not implied.  The distinction is a direct comparison of the claim to the prior art disclosure.  The distinction is a direct response to a rejection of specific claim language.  The distinction identifies the particular interpretation of a claim term.  And finally, the distinction identifies the particular structure in the prior art that ***does not*** disclose the scope of the claim limitation as the applicant defined that claim scope.  These are the conditions for which any reasonable competitor must conclude that the applicant had disavowed claimed subject matter.

Under this Court's precedent, distinctions made over the prior art disclaim the distinguished subject matter.  *See Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*, 15 F.4th 1136, 1144 (Fed. Cir. 2021) (distinction of prior art's use of multiple computers disclaimed use of multiple computers and narrowed claim scope to single computers); *Comput. Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1376-77, 1379 (Fed. Cir. 2008) (distinction of prior art's use of a portable display and keyboard "would lead a competitor to believe that patentee had disavowed coverage

of laptops" so "trial court correctly determined that the portable computer limitation requires 'a computer without a built-in display or keyboard that is capable of being moved or carried about.'"); *Gillespie v. Dywidag Sys. Int'l, USA*, 501 F.3d 1285, 1290-91 (Fed. Cir. 2007) (distinction of prior art's use of a cylindrical outer-surface bolt that was unable to be rotated by a tool disclaimed coverage of a bolt that was shaped to be rotated by a tool); *Altair Eng'g, Inc. v. LED Dynamics, Inc.*, 413 F. App'x 251, 255-56 (Fed. Cir. 2011) (distinction of the prior art's light placement on the basis that the light sources were spaced apart, unlike the claimed "closely-spaced" LEDs in reference to a figure, disclaimed configuration of LED spacing wherein another LED could fit in the space between the LEDs).  Here, the applicant's distinction of the two-plane limitation over Fig. 2B of Arndt is a clear and unmistakable disavowal.

OptoLum's arguments on appeal are nothing more than a belated attempt to avoid the applicant's clear distinction expressed to the Examiner (and the public) about the scope of its invention with respect to the two-plane limitation.  OptoLum argues that the distinction is not a disclaimer because the "statement is nothing more than the Applicant's disagreement over what Fig. 2B of Arndt teaches."  BBr. 19.  OptoLum contends that the "Applicant did not define the invention in contrast to Fig. 2B of Arndt."  *Id.*  The plain text of the prosecution history as discussed above demonstrates that OptoLum's argument here is wrong on its face.

The text of the prosecution history includes the statement "All the LEDs shown in FIG. 2B are in the same plane, i.e., the plane defined by the drawing sheet." Appx803.  The text of that statement is a declaratory characterization of how the applicant interprets what is disclosed in Fig. 2B.  According to the applicant, Fig. 2B illustrates *one* plane "defined by the drawing sheet" in which "[a]ll the LEDs shown in Fig. 2B are in the same plane." Appx803.  The applicant's characterization of Fig. 2B is made to directly explain why the applicant asserts that "[t]he Examiner is mistaken."  Appx803.  Specifically, the applicant is refuting the Examiner's application of Fig. 2B to the claim language which is directly identified by the preceding prosecution history sentence asserting "the Examiner points to Fig. 2B showing solid state light sources that are in a first plane and a second plane not coexentive with the first plane."  Appx803.

OptoLum argues that, in the statements above, the applicant was merely explaining that the disclosure of Fig. 2B did not show an elongate member because Fig. 2B is a two dimensional drawing.  BBr. 19.  This argument is belied by the prosecution history text (reproduced above) which contrasts the characterization of the single-plane arrangement of the LED packages in Arndt with the claim language requiring a first and a second plane.  There is no factual basis for OptoLum's assertion here that the two-plane prosecution history argument that "[a]ll LEDs . . . are in the same plane" merely describes the elongate member (a separate claim

element) when that two-plane argument is directly contrasted to the language of the two-plane claim limitation.

OptoLum contends that the prosecution history statements distinguishing Fig. 2B of Arndt are ambiguous.  BBr. 21.  There is no ambiguity here.  To the contrary, the plain text makes the distinction expressly clear.  For statements to be ambiguous the alleged multiple interpretations be "reasonable."  *Tech. Props. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1358 (Fed. Cir. 2017).  OptoLum's attempt to create ambiguity in the applicant's statement where there is none is simply not reasonable.  The evaluation of ambiguity concerns the actual statement—not mere attorney argument concerning what may have been meant.  In no uncertain terms, the applicant expressly referred to all of the LEDs in Figure 2B of Arndt as being in the same plane.  OptoLum's argument that there are multiple planes in Figure 2B of Arndt does not show ambiguity because it is not relevant to the actual statement made by the applicant—there is no evidence that the actual statement means anything other than what is apparent by the plain text of it; *all* the LEDs are in one plane.

Also, the plain text of the relevant prosecution history statements demonstrate that those statements are significantly more than "the Applicant's disagreement over what Fig. 2B of Arndt teaches."  Those statements do, in fact, inform the Examiner that the LEDs shown in Arndt are arranged in one plane, and therefore, such an

arrangement does not disclose the two-plane claim limitation. The simple text of these statements plainly demonstrate that the applicant did define the claimed invention in contrast to Fig. 2B of Arndt. There is no ambiguity in the prosecution history arguments and the finding of disclaimer is correct.

### 2.     The Claim Constructions Properly Account for the Disclaimer

The district court correctly construed: (1) "plane" to mean "a spatial relationship concerning certain identified locations on the elongate heat sink and having the specific mathematical description of a plane"; and (2) "disposed in a second plane not coextensive with said first plane" to mean "disposed in a second plane that is not the same as the first plane wherein the plurality of LEDs are not disposed in a single plane perpendicular to the axis of the elongate thermally conductive member." Appx41-42. Both of these constructions follow from the applicant's prosecution history disclaimer.

In construing these terms the district court recognized the clear disconnect between OptoLum's proposed constructions in litigation and the applicant's arguments in the prosecution history with respect to Arndt's Figure 2B. Indeed, the district court requested that the parties address the distinction between Figure 2 of the asserted patents and Figure 2B of Arndt. Appx2171-2173. OptoLum contended that Figure 2 of the asserted patent showed multiple planes. But, as the district court correctly explained, given the applicant's statements to the Examiner, it "look[ed]

as though the same 'planes' described by [OptoLum's] expert . . . would also apply to" Arndt's Figure 2B.  Appx2171-2173.

In a transparent effort to avoid the applicant's arguments with respect to Arndt's Figure 2B, OptoLum argued to the district court that the two-plane limitation should be construed as "arranged in a second flat surface not having the same spatial boundaries as the first flat surface."  Appx18.  The district court rejected OptoLum's attempt to undo the consequences of its disclaimer.

OptoLum still continues to argue on appeal that "[i]t is uncontestable that there are LEDs in multiple planes within the drawing sheet."  BBr. 21  But that argument, as the district court recognized, is plainly contrary to what the applicant represented to the Examiner.  The Examiner cited Figure 2B of Arndt for this precise disclosure—that the LED packages disclosed by it were disposed in multiple planes. Yet, the applicant unambiguously rejected that characterization, stating that the "Examiner [was] mistaken" because every LED shown in the figure was "in the same plane" as "defined by the drawing sheet."  Appx803.  Claim construction can, and should (as here) incorporate an applicant's prosecution-history distinction over the prior art.  *Sound View Innovations, LLC v. Hulu, LLC*, 33 F.4th 1326, 1334 (Fed. Cir. 2022).  Contrary to OptoLum's arguments, the district court's construction captured the appropriate scope of the claims in view of the intrinsic record.

To support its argument on appeal, OptoLum also relies on the disclosures from the "Background of the Invention" section of the '028 Patent that describe LEDs in prior art applications as "typically mounted in a planer fashion in a single plane that is disposed so as to be perpendicular to the viewing area." BBr. 24 (quoting Appx199). But that reliance is misplaced. The term "plane" has an ordinary meaning not limited to a physical flat surface. Moreover, the district court addressed OptoLum's argument and correctly explained that "[w]hile the specification and abstract mention LEDs being mounted on the elongate member's outer surface, 'plane' is used to describe the fashion in which the LEDs are arranged and it is not necessarily linked with the physical flat elongate member's outer surface." Appx27. The district court also emphasized that the "applicant's usage of the term [plane] within the prosecution history is consistent with the term not being limited to physical flat surfaces." Appx27.

The district court's rejection of OptoLum's attempt to read in a limitation to the "plane" claim term is correct and consistent with this Court's longstanding guidance that it is improper to rely on the specification's description of the prior art to import a claim limitation. *See Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc*., 334 F.3d 1294, 1301 (Fed. Cir. 2003) (holding in relevant part that background section's descriptions of advantages were insufficient to import a claim limitation). Because OptoLum's construction and associated arguments are directly contrary to

the prosecution history and this Court's precedent, they should be rejected. *Gillespie v. Dywidag Sys. Int'l, USA*, 501 F.3d 1285, 1291 (Fed. Cir. 2007) (holding patentee's "construction was [was wrong because it was] negated during prosecution").

This Court's precedent amply supports claim constructions that encompass the scope of the disclaimer made by the applicant during prosecution. *See Comput. Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1376-77, 1379 (Fed. Cir. 2008) (construing portable computer limitation as "a computer without a built-in display or keyboard that is capable of being moved or carried about" because applicant distinguished the invention over prior art that used a portable display and keyboard); *Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*, 15 F.4th 1136, 1144 (Fed. Cir. 2021) (construing "computer" and "first computer" as a single computer because of applicant distinguished the invention over prior art that used multiple computers); *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1313, 1317-18 (Fed. Cir. 2000) (construing "bottom plane" as referring to a structure, instead of location, because the applicant distinguished the structure of a prior art that disclosed a gap between two side planes on the basis that the prior art did not teach perforations at the bottom, which indicated invention had perforations in a physical structure constituting the bottom plane); *Altair Eng'g, Inc. v. LED Dynamics, Inc.*, 413 F. App'x 251, 255-56 (Fed. Cir. 2011) (construing "closely-spaced" as "not spaced-apart, such that adjacent LEDs are sufficiently close that

another LED cannot fit in the space there between" because applicant's distinction of prior that disclosed light sources which were spaced apart).

Here, the evidence and law demonstrate that the district court's construction is correct and fulfills the public notice functions of the patent system by limiting the claim to what the applicant declared the claim scope to be. *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) ("The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent."); *Gillespie*, 501 F.3d at 1291 ("The patentee is held to what he declares during the prosecution of his patent.").

## II.    ESTOPPEL OF OPTOLUM'S EQUIVALENTS CLAIM IS CORRECT

### A.    Prosecution History Estoppel Prevents Patentees From Recapturing Subject Matter Surrendered During Prosecution Under The Doctrine Of Equivalents

"Prosecution-history estoppel limits the application of the doctrine of equivalents." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 975 (Fed. Cir. 2018). In relevant part, prosecution history estoppel arises during prosecution "by surrendering claim scope through argument to the patent examiner ('argument-based estoppel')." *Intendis GmbH v. Glenmark Pharms., Inc., USA*, 822 F.3d 1355, 1364 (Fed. Cir. 2016) (citation omitted). When "a patentee surrenders some scope during prosecution, that territory isn't available later as a

doctrine-of-equivalents battleground." *Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*, 15 F.4th 1136, 1145 (Fed. Cir. 2021).

Argument-based estoppel may arise from "[c]lear assertions made during prosecution in support of patentability, whether or not actually required to secure allowance of the claim[s]" *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1368 (Fed. Cir. 2007) (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1583 (Fed. Cir. 1995)). The inquiry focuses on "whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *Id.* at 1367-68. An "argument-based estoppel" that affects one limitation "will also extend to all claims in which that limitation appears." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1350 (Fed. Cir. 2002).

In short, patentees are prevented from disclaiming the scope of a limitation during prosecution and then, post-issuance, attempting to recapture that scope though artful infringement allegations. If a competitor reasonably believes that the applicant surrendered the relevant subject matter, then the patentee is estopped from relying on the doctrine of equivalents to recapture that scope.[4]

---

[4] OptoLum's opening brief repeatedly makes a veiled effort to ascribe legal significance to the fact that the above statement distinguishing over the prior art was made by the prosecuting counsel. BBr. 4, 7, 12, 28. But any such effort should be dismissed outright. This Court has previously rejected such attempts by patentees "to sacrifice the prosecuting attorney who wrote and prosecuted the application before the PTO . . . for the sake of its case." *Desper Prod., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1335 (Fed. Cir. 1998); *Springs Window Fashions LP v. Novo*

**B.    OptoLum's Equivalents Theory Improperly Attempts To Recapture Disclaimed Subject Matter**

OptoLum conceded that the single-ring bulbs do not literally infringe the two-plane limitation.  BBr. 8.  That is, there is no issue of fact concerning whether the LEDs in the single ring bulbs are arranged in a ***single*** plane; they are.  The judgment of no literal infringement concerning the Single Ring bulbs is not on appeal.  However, OptoLum now argues that the district court erred in finding that prosecution history estoppel barred their claims of infringement under the doctrine of equivalents.  BBr. 28-40.[5]  Despite their arguments to the contrary, the record in this case is clear—LEDs disposed in a single plane perpendicular to the axis of the tube is disclaimed subject matter, and there is no genuine issue of fact that the LEDs in Cree's accused Single Ring bulbs are arranged in a single plane.  Accordingly, as a matter of law, the specific single ring placement of LEDs used in Cree's accused bulbs has been disclaimed and that disclaimed subject matter cannot now be

---

*Indus., L.P.*, 323 F.3d 989, 995-96 (Fed. Cir. 2003) (rejecting argument that patent attorney's statements distinguishing over a prior-art reference should be treated as an error).  The prosecuting attorney for the Asserted Patents represented the applicant and statements in the prosecution history are binding on the applicant.

    [5] Cree did not contest that the multiple-ring bulbs met the two-plane limitation, and OptoLum's infringement claims with respect to the multiple-ring bulbs proceeded to the jury.  After deliberation the jury returned a verdict of non-infringement.  That finding was not appealed and is thus final.

recaptured by OptoLum.  Regardless of OptoLum's theory of equivalents, that legal boundary cannot be overcome.

OptoLum's doctrine of equivalents argument proceeds in two prongs.  First, OptoLum effectively re-argues the same issues concerning the prosecution history disclaimer; namely, that there was no clear and unmistakable disclaimer of LED packages disposed in a single plane perpendicular to the central axis of the tube. Second, OptoLum contends that the individual LED chips within each LED package are the equivalent of the LED package for purposes of proving infringement with respect to the single-ring bulbs under the doctrine of equivalents.  Both prongs of OptoLum's argument fail.

On its face, as discussed at length above, the applicant's prosecution history argument distinguishing Arndt was a disclaimer.  Also, as viewed from what a competitor would reasonably believe was surrendered, that argument would inform the scope of the surrendered subject matter.  *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1368 (Fed. Cir. 2007).  Here, comparing the single-ring bulbs with the applicant's argument concerning Figure 2B of Arndt confirms that the district court was correct in its conclusion that estoppel applies.

The single-ring bulbs, in relevant part, have a plurality of LED packages disposed in single plane perpendicular to the tube around which the LEDs are mounted.  The ***plane perpendicular*** to the tube is illustrated in ***red*** in the annotated

figures below showing the LED packages placed on a metal ceramic circuit board that is then wrapped around a tube.



Appx4270-80.

A top view of the single-ring bulbs shows a structure that is essentially identical to the one depicted in Figure 2B of Arndt:



The applicant recognized that the Examiner cited Figure 2B of Arndt (above-right) as "as showing solid state light sources that are in a first plane and a second plane not coextensive with the first plane." Appx803. As the applicant characterized the Examiner's interpretation of Arndt, the **light source in the first plane** is annotated in **blue** in the above figures, and the **light source in the second plane** not coextensive with the first plane is annotated in **green**. The applicant, however, told the Examiner (and competitors) that "[t]he Examiner [was] mistaken" concerning the interpretation of Figure 2B of Arndt as it related to the claimed two-plane limitation. Appx803. In unequivocal terms, the applicant argued that: "**<u>All the LEDs shown in FIG. 2B are in the same plane, i.e., the plane defined by the drawing sheet.</u>**" Appx803. (emphasis in original).[6]

---

[6] In a footnote, OptoLum contends that there is no reason an ordinary competitor would assume disclaimer of equivalents arising from to the applicant's statement as to the '303 Patent because the statement was made in the '028 Patent, which was prosecuted two years after the '303 Patent. BBr. 39. OptoLum is wrong. When there are multiple patents in a family, prosecution disclaimer and prosecution-history estoppel may arise from disavowals made during the prosecution of ancestor or later-filed patent applications. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1333 (Fed. Cir. 2003) (disclaimer); *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1323 (Fed. Cir. 2013) (prosecution-history estoppel); *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1343 (Fed. Cir. 2015) ("A statement made during prosecution of related patents may be properly considered in construing a term common to those patents, regardless of whether the statement pre- or post-dates the issuance of the particular patent at issue."). Beyond that, the argument lacks credibility particularly within the context of the two asserted patents, which share almost identical specifications and claim limitations.

The foregoing argument by the applicant characterizing the arrangement of LED packages disclosed in Arndt was unambiguous.  At a minimum, the applicant's argument to the Examiner about Arndt's Figure 2B vis-à-vis their claimed structure told competitors that structures having all LEDs in a single plane perpendicular to the axis of the tube are ***not*** within the scope of the two-plane limitation.  It is precisely that same single-plane structure incorporated into the single-ring bulbs, as shown in the annotated figure below.



Numerous Federal Circuit cases support the conclusion that these facts conclusively created estoppel.  For instance, in *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1367-68 (Fed. Cir. 2007), this Court concluded that applicant was estopped from recapturing via doctrine of equivalents the scope of their claim

"carrier frame" that was not rectangular-shaped. During prosecution the applicant had distinguished their invention over the prior art on the basis that the prior art did not show a rectangular-shaped frame. *Id.* This Court held that those arguments "clearly and unmistakably show[ed] that [the applicant] limited its claims to a rectangular-based frame and surrendered any claim to a frame that was not rectangular or four-sided." *Id.* Those statements, this Court noted, would lead a "competitor . . . to reasonably believe that [the applicant] had surrendered any claim to a frame that was not rectangular or four-sided in shape, such as [the accused infringer's] three-sided, u-shaped device." *Id.* These are the exact circumstances issue here, wherein the statements made by the applicant with respect to Arndt's Figure 2B would lead a competitor to reasonably believe that the applicant surrendered any claim to LED packages which were all disposed in a single plane perpendicular to the axis of the tube.

Similarly, in *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1315-17 (Fed. Cir. 2010), this Court considered whether the accused structure met the claimed "single anchor limitation." The accused structure had two tabs separated by a one-millimeter wide gap. During prosecution the applicants distinguished a prior art reference on the basis that it disclosed two anchors instead of a single element. This Court held that such a statement barred patentee's attempt to argue that a two-anchor device was the equivalent of the accused structure.

In the present case, the applicant's prosecution history argument focused on distinguishing the single plane defined by the LED packages from the two-plane claim limitation.  That distinction defined specific subject matter that the applicant contended was not covered by the claim language at issue.  That is a disclaimer subject to estoppel, there is no ambiguity about it.

The second prong of OptoLum's argument focuses on the individual LED chips within each LED package, arguing that a section of the package corresponding to each chip is equivalent to the LED package.  BBr. 29-33.  That is, OptoLum attempts to overcome the lack of literal infringement by arguing that individual sections (each corresponding to an LED chip) within the LED package are disposed in multiple planes.  *Id.*  That argument is misleading and incorrect on its face.

OptoLum's doctrine of equivalents argument is directly contradicted by the existing factual record in this case.  As explained above, in granting summary judgment of no literal infringement (not appealed here), the district court found "there is no genuine issue of material fact that the Single Ring bulbs do not literally infringe."  Appx75-77.  As a matter of uncontested fact, the same Cree LEDs (about which OptoLum now argues) have been found to be disposed ***only in a single plane***

(*i.e.*, not meeting the two plane limitation).[7]  OptoLum should not now be heard to contest the factual record (*e.g.*, argue that the accused LEDs consist of multiple sections) nor to misdirect the argument on appeal to structural features of the device (*e.g.*, portions of the LED) that are not part of the claims.

OptoLum's equivalents theory cannot recapture that single ring subject matter it surrendered in prosecution.  Moreover, even considering the particular equivalents theory advanced by OptoLum, the district court correctly found that OptoLum's theory was not factually supported.  As an initial starting point, OptoLum's efforts to now equate the individual chips (and associated portions of the package) to the claimed LEDs requiring a package stands in stark contrast to the statements OptoLum made to the district court during claim construction.  Then, OptoLum explained that "[t]he [LED chip] diode by itself" is "not all that useful because ***you need to . . . put it into a package that has kind of the electrical leads built in and the kind of optics and various other components that actually make it something an engineer can use for various different lighting applications*.**"  Appx2028. OptoLum noted that the asserted patents, and any reference to LEDs, do not "talk[] about the little chip itself inside the package [but] talk[] about the package."

---

[7] In the JCCS, OptoLum agreed that the construction of LED incorporated a package.  It was that placement of the LED packages around the tube in a single plane for which no fact issue was raised.  Appx563; Appx2255-2257.

Appx2028.  Indeed, OptoLum admitted that the chip by itself is effectively useless unless it is combined with the "other components" that comprise "the package . . . that make the LED chip - - the LED actually useful."  Appx2029.  According to OptoLum, that is how a POSA would understand LEDs—as the package.  Appx2028.

Consistent with the OptoLum's position during claim construction, the district court concluded that the scope of the applicant's disclaimer during prosecution concerned LED packages.  And while OptoLum now contends that the district court offered "no analysis of whether the claimed equivalent structure was surrendered during prosecution" (BBr. 33), the record shows otherwise.

The district court began its analysis by explaining that "[t]he key to both solid-state light sources and light emitting diode is the fact that the product has to emit light, which in turn means that it is in a package . . . at a minimum, a mechanical structure and a power supply."  Appx6522.  The "package" must "have an anode and a cathode so that the power runs in one direction."  Appx6522.  Turning to the disclosures in Arndt, which informed the extent of the disclaimer, the district court noted "[t]here's no doubt [in the court's] mind, whether it's called an LED or a package, that what's disclosed . . . in [Arndt] as LEDs in a single plane are LED packages in a single plane."  Appx6522.  In view of that, the district court explained it was that "particular arrangement" of LED packages that "was disclaimed during the patent history giving meaning to the two-plane limitation."  Appx6522.

The district court recognized, and discredited, the argument advanced by OptoLum that "each individual LED chip within the packages arranged on the single-ring bulb constitutes a separate package." Appx6523. That theory, according to the district court, failed to capture that any conceived package equivalent must have "one mechanical structure and one power supply [unique] to that particular package." Appx6523. That is, each LED package, and any alleged equivalent of an LED package, must have "one mechanical substate and one power supply." Appx6523. This is so because the key to any alleged equivalent of an LED package is "emit[ting] light," and that requires both "the structure and the power source" that are components of an LED package. Appx6524. The district court thus concluded that OptoLum's equivalents arguments were unsupported and allowing OptoLum to rely on equivalents to assert infringement of the single-ring bulbs would in turn allow them to "recapture . . . [the] single plane alignment of LED packages" disclosed by Arndt and disavowed during prosecution. Appx6523.

The district court's conclusion was further supported by trial testimony. OptoLum's expert (Dr. Steigerwald) testified that each LED used in Cree's bulbs incorporate a package that has "one common substrate" along with "one anode and one cathode," which is the "only connection to the outside world." Appx5364-5365, Appx5371. It is an uncontested fact that, even though each Cree LED has multiple chips, the LED itself has one substrate and one anode/cathode connection—that is,

it is one package.  And, unlike a package (which has all the necessary components to emit light by itself), no single LED chip in the conceived equivalent could emit light by itself (that is, without the components that supply individual power).  Appx5364-5365, Appx5371.  Similarly, the inventor of the Cree bulbs explained that a "package" is where the chip "goes into," which has an anode and a cathode" and a "base" made of a "ceramic substrate."  Appx5891-5892.  Additionally, Cree's expert (Dr. Bretschneider) explained that the individual LED chips "don't have their own individual structure."  Appx6263.  In short, the package cannot be divided up into sections as OptoLum argues, and as such, their conceptual equivalent is simply not an equivalent.  Appx6263.

The evidentiary record in this case is clear.  As the district court correctly concluded, the applicant distinguished its claimed structure over the LED packages disclosed in Arndt's Figure 2B by arguing those LEDs were all arranged in a single plane perpendicular to the central axis of the tube.  Also, there is no factual dispute that the LED packages in Cree's accused Single Ring bulbs are all disposed in a single plane perpendicular to the axis of the tube.  OptoLum cannot recapture the very subject matter it gave up during prosecution.   Moreover, OptoLum's equivalents theory with respect to the single-ring bulbs is factually unsupported.  The district court was correct to find estoppel.

## III.   EXCLUDING MR. SCALLY'S TESTIMONY WAS NOT AN ABUSE OF DISCRETION

A district court's evidentiary rulings, including *Daubert* rulings, should not be overturned absent an abuse of discretion.  *See Bryte ex rel. Bryte v. Am. Household, Inc.*, 429 F.3d 469, 475 (4th Cir. 2005) ("The district court has broad latitude in ruling on the admissibility of evidence, including expert opinion, and we will not overturn *Daubert* evidentiary rulings with respect to relevance and reliability absent an abuse of discretion.").  Here, OptoLum contends that the district court abused its discretion when it prohibited OptoLum's damages expert, Mr. Scally, from testifying as to a royalty rate that included a 5% incremental rate based on brand value.  BBr. 40.  OptoLum is wrong, the district court is correct and there has been no abuse of discretion.

### A.   Exclusion of Mr. Scally's "Brand Value" Testimony Was Correct

### 1.   Mr. Scally's 5% Brand Value Rate Is Not Supported

A patentee may only receive the value that the patented technology contributed to the accused products, and nothing more.  *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 1265 (2019) ("[I]n the context of a utility patent, it is only the patented technology that is taken from the owner, so the value to be determined is only the value that the infringing features contribute to the value of an accused product.").

The only ground asserted for seeking damages in this case is a reasonable royalty under 35 U.S.C. § 284. "[A] reasonable royalty 'cannot include activities that do not constitute patent infringement, as damages are limited to those 'adequate to compensate for infringement.'" *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 411 (Fed. Cir. 2018) (quoting *Astra Zeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015)). In *Enplas*, the Federal Circuit overturned a jury's reasonable royalty award because that "award was based, in part, on non-infringing sales of non-accused [products]." *Id.*

Here, there was no dispute of fact before trial that Mr. Scally's 5% incremental rate for brand value does not compensate for the use or sale of the Accused Products. Mr. Scally admitted that his proposed 5% incremental rate for brand value accounts for value *other than* the value that the Asserted Patents allegedly contributed to the Accused Products. Appx2617-2619 (Tr. 180:23-181:15). Mr. Scally's admission that brand value is "something else" separate from the right to make, use, and sell the Accused Products shows that Mr. Scally attempted to capture value for business activity that is not covered by the asserted patent rights. Such an attempt is legally impermissible.

The district court also correctly found that Mr. Scally's 5% incremental rate is not based on sufficient evidence. Appx155-157. Mr. Scally never measured or quantified Cree's business value, for which he purports to account. Appx2620 (Tr.

182:15-19). Absent some measurement of that business value, Mr. Scally's analysis rests on pure speculation. Moreover, Mr. Scally's incremental rate for brand value fails to account for, or even recognize that, Cree is a company having lines of business wholly separate from lighting or light bulbs, including radio frequency ("RF") products and LED chips and components. None of the products in these business lines were accused of infringement and Mr. Scally completely fails to explain how the value of these other distinct business lines have any relation to the sales of accused light bulbs.[8]

---

[8] OptoLum cites two cases in support of its argument that brand value should be considered as part of a damages analysis. BBr. 48-49. Neither case supports OptoLum's argument. As an initial matter, neither case addresses the showing required to establish that the district court abused its discretion in an evidentiary ruling. Moreover, both cases are distinguishable. In the first case, *Soverain Software, LLC v. Newegg, Inc.*, 836 F. Supp. 2d 462, 476-77 (E.D. Tex. 2010), the court merely recognized that commercial success of the infringer's product may be considered in a reasonable royalty analysis. *Id.* The circumstances of *Soverain* are distinct from those of the present case in which Mr. Scally attempts to recover value for activities other than for the sale of infringing products. He attempts to recover for the success of separate businesses, concerning e.g., RF products or chips and components having no discernable (or supported) connection to the infringing products. The *Soverain* case supports no such argument. The second case, *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 989 F. Supp. 547, 612 (D. Del. 1997), is similarly inapposite. In *Proctor & Gamble*, the court merely found that high levels of infringing sales supported a higher royalty rate. *Id.* Again, however, the "brand value" Mr. Scally seeks admittedly concerns activities other than infringing sales. Such an attempt is not permissible and the *Procter & Gamble* case is not to the contrary. Moreover, both these cases address factors to be used in arriving at a reasonable royalty rate, which is not at issue on appeal. The district court allowed OptoLum's evidence as to factors to be used in arriving at a reasonable royalty rate.

As the district court found, Mr. Scally's testimony regarding a 5% incremental rate for brand value was not reliable because it was not tied to the alleged infringing activities or supported by sufficient data.

### B.    Mr. Scally Failed To Establish That The GE And Hoover Trademark Licenses Are Comparable

The district court also properly found that Mr. Scally's reliance on the 5% rate from the GE and Hoover trademark licenses to calculate his 5% incremental rate in this case was improper. The factual circumstances of the GE and Hoover licenses are not comparable, economically or technologically, to the circumstances of the hypothetical negotiation between OptoLum and Cree on which Mr. Scally opined. Reliance on non-comparable licenses is improper as a matter of law. *See LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) (explaining that expert testimony improperly relying on licenses with no "other discernable relationship to the claimed technology" must be rejected) (quoting *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 860 (Fed. Cir. 2010)).

The GE and Hoover licenses are trademark licenses that represent the transfer of the value of an established brand (*i.e.*, "GE" or "Hoover") to the licensee. Mr. Scally conceded this fact. Appx3935. A trademark license is fundamentally different than a patent license because it concerns the licensor lending the

---

At issue on appeal is whether the district court abused its discretion in precluding evidence on damages in addition to a reasonable royalty.

imprimatur of its "mark" to the licensee for consideration. *See* 3 McCarthy on Trademarks and Unfair Competition § 18:2 (5th ed.), Anti-assignment-in gross rule—Trademark cannot be assigned apart from the good will it symbolizes. The facts of a trademark transfer are inapposite to the economic circumstances of the present case because OptoLum admittedly had no established brand to transfer to Cree. In other words, OptoLum did not have the one thing a trademark license requires—a marketable imprimatur of the licensor on the transferred mark.

Further, although Mr. Scally contended that Cree was using the Accused Products in an attempt to create a brand, Mr. Scally admitted that Cree had not established a brand from the products. Appx3935. The economic circumstances of the present case are that no brand has been transferred at all—OptoLum did not have a brand to transfer and Cree did not get such a brand transfer.

Finally, beyond the differences in economic circumstances, the GE and Hoover licenses did not involve comparable technology to that of the Asserted Patents. The GE and Hoover licenses related to ceiling fans and other general lighting fixtures. Appx2686-2758. Mr. Scally conceded that the technologies are not comparable. Appx2616 (Tr. 170:14-19 ("Q: Is it your contention that the Safety Quick Light Device and ceiling fans are comparable to the OptoLum technology that is at issue in the hypothetical negotiation? A: No, it's not.")).

Because the licenses on which Mr. Scally relies for his 5% incremental royalty rate concerning brand value are not comparable, either economically or technologically, Mr. Scally's testimony concerning the 5% incremental rate was unreliable and was properly excluded.

### C.    No Abuse Of Discretion In Excluding Mr. Scally's Testimony

To establish abuse of discretion in excluding Mr. Scally's brand value testimony, OptoLum must show that the district court's conclusion "rest[ed] upon a clearly erroneous factual finding" or an "error of law." *Nease v. Ford Motor Co.*, 848 F.3d 219, 228 (4th Cir. 2017).  OptoLum has failed to meet that high standard.

The district court provided three reasons for excluding Mr. Scally's testimony . The district court first found that "Mr. Scally never explain[ed] ***how or why*** a hypothetical negotiation prior to infringement would take into consideration an increase in brand value from the use of a nonexclusive license from OptoLum or the relationship between a non-exclusive license and brand development in establishing the parameters of a hypothetical negotiation."  Appx156 (emphasis added).   The district court explained that "the brand value calculation is based on facts and assumptions that occurred in a market not affected by, ***or that even addressed***, a hypothetical non-exclusive licensing agreement."  Appx156 (emphasis added).

OptoLum argues error in faulting Mr. Scally for relying on "post-infringement success" and "hindsight" and cites to case law holding that a hypothetical negotiation

analysis *may* consider post-infringement evidence.  BBr. 42-43.  Those cases are inapposite, however, because the district court did not hold that post-infringement evidence *cannot* be used in a hypothetical negotiation analysis.  Rather, the district court here found that Mr. Scally failed to *connect* the alleged post-infringement brand development that occurred in the absence of a non-exclusive license from OptoLum to the pre-infringement hypothetical negotiation that would have occurred between OptoLum and Cree.  The district court explained that "Mr. Scally *offers no assumptions or facts* to explain how a hypothetical, nonexclusive license negotiation would have been impacted by potential brand value increases or, more significantly, how those facts in turn would have impacted the calculation of a hypothetical reasonable royalty." Appx157 (citing *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1081 (Fed. Cir. 1983) (emphasis added)).  The district court further noted that "Mr. Scally never explain[ed] *how or why* a hypothetical negotiation prior to infringement would take into consideration an increase in brand value." Appx156 (emphasis added).

The district court next found that "Mr. Scally's opinion - that brand value increase would have put upward pressure on the likely negotiated royalty - is entirely speculative." Appx157.  The district court explained that "Mr. Scally offers no data or support to suggest any brand success could have been derived from product sales

arising from a hypothetical non-exclusive license in the same way and manner that those sales occurred without a license agreement." Appx157.

In arguing abuse of discretion in finding that Mr. Scally's brand value rate was based on speculation, OptoLum points to Mr. Scally's citation to alleged evidence of Cree's brand development. BBr. 43-44. OptoLum misses the point. Regardless of its evidentiary citations, OptoLum does not address the finding that Mr. Scally failed to provide data or support that **connects** the brand value increase to the alleged infringing activities or hypothetical negotiation and failed to **measure or quantify** any actual Cree brand value increase from 2013 to 2017. Appx2620 (Tr. 182:15-19). Absent such a connection, and none has been shown, evidence of Cree's brand development is irrelevant to this issue.

Finally, the district court found that, "Mr. Scally fails to explain how or why the trademark contract he used for guidance—the G.E./Safety Quick contract and the Hoover/Capstone Industries contract—apply to the hypothetical royalty negotiation between OptoLum and Cree." Appx158. It explained that "[n]o data, facts, or analysis are provided to explain whether the value of the trademark licenses is derived from total sales, non-exclusive licenses, unique products, ownership of technology, or anything else." Appx158-159. "The analysis appears to rely exclusively on 'brand name,' without any analysis of the parameters of the hypothetical negotiation, including the effect, if any, of the technology on subject to

a non-exclusive license instead of ownership of the technology."  Appx158-159 (citation omitted).

In asserting that the district court abused its discretion, OptoLum makes the conclusory argument that "Mr. Scally concluded that these two [trademark] licenses were most comparable because they involved trademarks to consumer lighting brands and the economic circumstances were similar to the hypothetical negotiation between OptoLum and Cree."  BBr. 49-50.  However, as the district court correctly found, Mr. Scally failed to identify those allegedly similar "economic circumstances" or to connect the trademark licenses to the hypothetical negotiation between OptoLum and Cree.  There was no abuse of discretion because, as explained above, the factual circumstances of the GE and Hoover licenses are not comparable, economically or technologically, to the circumstances of the hypothetical negotiation.  Those licenses both involved a transfer of established brand value that does not exist in the hypothetical negotiation between OptoLum and Cree and the licenses involved different technologies.

OptoLum also asserts that using trademark licenses to identify the value of patented technology is a "reliable and generally accepted valuation methodology known as the 'relief from royalty' method."  BBr. 50.  This is simply not correct nor supported.  The "relief from royalty" method, as described in the excerpt from "The Comprehensive Guide to Economic Damages," on which OptoLum relies, does not

indicate that trademark and patent licenses are equivalent for purposes of a damages valuation. Nor does the Guide suggest that the use of trademark licenses is a "generally accepted" means for a patent damages valuation, as OptoLum asserts. BBr. 50. Rather, the Guide presumes that licenses used to obtain market royalty rates involve the *same* IP as what would be licensed in hypothetical negotiations. The licenses relied on by Mr. Scally fail to comply with that presumption.

OptoLum has wholly failed to establish that the district court abused its discretion or committed an error or law in excluding Mr. Scally's testimony regarding a royalty rate that accounts for any increase in brand value.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should affirm the holdings of the district court.

Dated: October 28, 2022

Respectfully submitted,

*/s/ Blaney Harper*
Blaney Harper
Edwin Garcia
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
(202) 879-3939

Peter D. Siddoway
Sage Patent Group
2301 Sugar Bush Road, Ste. 200
Raleigh, NC 27609
(984) 219-3369

*Counsel for Appellee Cree, Inc*

- 62 -

# <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Federal Circuit Rule 32(b)(1) because it contains 13,417 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Times New Roman 14-point font.

Dated: October 28, 2022                    Respectfully submitted,


                                           */s/ Blaney Harper*
                                           Blaney Harper
                                           Edwin Garcia
                                           JONES DAY
                                           51 Louisiana Avenue NW
                                           Washington, DC 20001
                                           (202) 879-3939

                                           Peter D. Siddoway
                                           Sage Patent Group
                                           2301 Sugar Bush Road, Ste. 200
                                           Raleigh, NC 27609
                                           (984) 219-3369

                    *Counsel for Appellee Cree, Inc.*